I/S

FILED
CLERK, U.S. DISTRICT COURT

2/7/22

CENTRAL DISTRICT OF CALIFORNIA
BY: ____CS____ DEPUTY

Fee Paid

1  JUSTIN T. BERGER (SBN 250346)
   jberger@cpmlegal.com
2  THERESA E. VITALE (SBN 333993)
   tvitale@cpmlegal.com
3  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
4  840 Malcolm Road
   Burlingame, CA 94010
5  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
6
7  *Attorneys for Relator*
8
   ### UNITED STATES DISTRICT COURT
9
   ### CENTRAL DISTRICT OF CALIFORNIA
10
11 [UNDER SEAL].,                          CASE NO.CV22-828-JAK(MAAx)

12          Plaintiffs,                    **COMPLAINT FOR**

13       v.                               1. **Submission of a False Claim**
                                              **31 U.S.C. § 3729(a)(1)(A);**
14 [UNDER SEAL],
                                          2. **Making False Statement in**
15          Defendants.                      **Support of a Claim**
                                             **31 U.S.C. § 3729(a)(1)(B)**
16
                                          3. **Conspiracy to Violate the False**
17                                           **Claims Act**
                                             **31 U.S.C. § 3729(a)(1)(C)**
18
                                          4. **Improper Retention of Money**
19                                           **Owed to the Government**
                                             **31 U.S.C. § 3729(a)(1)(G)**
20
21
22                                        **DEMAND FOR JURY TRIAL**
23
24
25                                        **[FILED IN CAMERA AND**
                                          **UNDER SEALPURSUANT TO**
26                                        **31 U.S.C. § 3730(b)(2)]**
27
28

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**

1  JUSTIN T. BERGER (SBN 250346)
   jberger@cpmlegal.com
2  THERESA E. VITALE (SBN 333993)
   tvitale@cpmlegal.com
3  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
4  840 Malcolm Road
   Burlingame, CA 94010
5  Telephone: (650) 697-6000
6  Facsimile: (650) 697-0577

7  *Attorneys for Relator*

**UNITED STATES DISTRICT COURT**

8  **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 9  UNITED STATES OF AMERICA *ex rel.* ASHWANI CHAWLA., | CASE NO. |
| 10  Plaintiffs, | **COMPLAINT FOR** |
| 11  v. | **1. Submission of a False Claim 31 U.S.C. § 3729(a)(1)(A);** |
| 12  ASPEN SKILLED HEALTHCARE, INC.; JAY BRADY; RYAN CASE; JEFF BRADSHAW; ALGD, LLC dba STONEBROOK HEALTH AND REHABILITATION; ALGT, LLC dba WOODLANDS HEALTHCARE CENTER; AWHC, LLC dba MISSION PALMS HEALTHCARE CENTER; ASFC, LLC dba SIERRA VISTA HEALTHCARE; ATMC, LLC dba TRACY NURSING AND REHABILITATION CENTER; ASCC, LLC dba RIVERWOOD HEALTHCARE CENTER; AOTN, LLC dba OAKLAND HEIGHTS NURSING AND REHABILITATION; ACSB, LLC dba MARINA POINTE HEALTHCARE AND SUBACUTE; ALHL, LLC dba LODI NURSING AND REHABILITATION, ALAL, LLC dba KEI-AI LOS ANGELES HEALTHCARE CENTER; AGVA, LLC dba KEI-AI SOUTH BAY HEALTHCARE CENTER; AICF, LLC dba SAKURA INTERMEDIATE CARE FACILITY; ASJK, LLC dba THE AVENUES TRANSITIONAL CARE CENTER; ASFP, LLC dba PACIFIC HEIGHTS TRANSITIONAL CARE CENTER; AWCY, LLC dba La Casa Via Transitional Care Center; AGSE, LLC dba SOUTH MARIN HEALTH & WELLNESS CENTER; APTB, LLC dba PETALUMA POST - ACUTE REHABILITATION; ASMB, LLC dba | **2. Making False Statement in Support of a Claim 31 U.S.C. § 3729(a)(1)(B)** |
| | **3. Conspiracy to Violate the False Claims Act 31 U.S.C. § 3729(a)(1)(C)** |
| | **4. Improper Retention of Money Owed to the Government 31 U.S.C. § 3729(a)(1)(G)** |
| | **DEMAND FOR JURY TRIAL** |
| | **[FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)]** |

**COMPLAINT**

1  | BERKLEY EAST CONVALESCENT
2  | HOSPITAL; ASBW, LLC dba BERKLEY WEST CONVALESCENT HOSPITAL;
3  | ASD6, LLC dba HILLCREST HEIGHTS HEALTHCARE CENTER,

4  |                    Defendants.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT**

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ................................................................................. 1

II.  JURISDICTION AND VENUE .......................................................... 1

III. PARTIES ............................................................................................. 2

IV.  THE FALSE CLAIMS ACT ............................................................... 5

V.   THE CARES ACT AND PPP PROGRAM ......................................... 6

VI.  THE ASPEN SKILLED HEALTHCARE, INC. DEFENDANTS'
     DID NOT QUALIFY FOR THE LOANS ......................................... 10

     A.   Aspen Skilled Healthcare, Inc. and its Affiliates Far Exceed
          the 500-Employee Cap, and the Revenue Benchmarks ........................ 10

     B.   Aspen Skilled Healthcare, Inc. and its Affiliates Submitted
          Fraudulent PPP Applications ......................................................... 14

     C.   The Aspen Skilled Healthcare, Inc. Chain Had Significant
          Sources of Financial Assistance, and Otherwise Were Not
          in Need of PPP Loans ................................................................... 15

VII. CAUSES OF ACTION ...................................................................... 19

     FIRST CAUSE OF ACTION
     Submission of a False Claim
     31 U.S.C. § 3729(a)(1)(A) ................................................................ 19

     SECOND CAUSE OF ACTION
     Making False Statement in Support of a Claim
     31 U.S.C. § 3729(a)(1)(B) ................................................................ 20

     THIRD CAUSE OF ACTION
     Conspiracy to Violate the False Claims Act
     31 U.S.C. § 3729(a)(1)(C) ................................................................ 20

     FOURTH CAUSE OF ACTION
     Improper Retention of Money Owed to the Government
     31 U.S.C. § 3729(a)(1)(G) ................................................................ 21

VIII. PRAYER FOR RELIEF ..................................................................... 22

JURY DEMAND ......................................................................................... 23

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**                                                                 i

## I.    **INTRODUCTION**

1.    The novel coronavirus has wrought devastation throughout our country. In response, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in March 2020.  The law was intended to provide emergency financial assistance to Americans suffering from the economic impact of the virus.

2.    One highly publicized portion of the aid was the Paycheck Protection Program ("PPP").  Congress initially authorized $349 billion in forgivable loans to small business, and then in April 2020 authorized more than $300 billion in additional funding for PPP.

3.    Relator Ashwani Chawla brings this lawsuit under the False Claims Act to redress the Aspen Skilled Healthcare, Inc. Defendants' improper receipt and retention of PPP loans, as well as to hold the Aspen Skilled Healthcare, Inc. Defendants liable for conspiring to obtain millions of dollars of taxpayer funds to which they were not entitled. As a result of the defendants' fraud conspiracy, they received PPP loans totaling $10,000,000.00.

4.    Not a penny of these loans were necessary, and Defendants made false certifications of need and eligibility under the PPP program and the CARES Act.  These false statements were material in getting the loan approved.  These statements were objectively false and were knowingly so.  Only by making these false certifications and statements were the Defendants able to claim eligibility for the loan program and, most tantalizing, for eventual forgiveness of the loans.  In short, the loans were not needed and Defendants were not eligible yet resulted in millions of taxpayer dollars being directed to the Aspen Skilled Healthcare, Inc. Defendants to earn interest and profit off the PPP program, all with the opportunity to have the principal and interest of those loans forgiven.

## II.    **JURISDICTION AND VENUE**

5.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and 31 U.S.C. § 3732, the latter of which specifically confers

1    jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

2        6.    This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C.

3    § 3732(a) because that section authorizes nationwide service of process and because

4    Defendants have minimum contacts with the United States.  Moreover, Defendants can

5    be found in and have transacted business in the Central District of California.

6        7.    Venue is proper in the Central District of California pursuant to 28 U.S.C.

7    §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a) because Defendants can be found in

8    and/or transact or have transacted business in this district.  At all times relevant to this

9    Complaint, Defendants regularly conducted, and continue to conduct, substantial

10    business within this district and/or maintain employees and offices in this district.  The

11    events that gave rise to this action occurred in this district.

12    **III.    PARTIES**

13        8.    Relator ASHWANI CHAWLA files this action on behalf of the United

14    States pursuant to the False Claims Act.  Mr. Chawla is an original source of the

15    information contained herein.  Mr. Chawla is a licensed California CPA as well as a

16    licensed Nursing Home Administrator.  He has worked for several large healthcare and

17    healthcare consulting firms, such as Kellogg and Andelson, Zenith Health Care, and

18    Windsor Healthcare.  Mr. Chawla has extensive expertise in Medi-Cal cost reports and

19    worked as a government cost report auditor for two years.  Throughout his career, cost

20    report preparation, consulting and compliance has been his area of expertise.  At the time

21    of filing this lawsuit, the fact that the Aspen Skilled Healthcare, Inc. Defendants were

22    ineligible for receiving a PPP loan was not publicly disclosed.

23        9.    Defendant ASPEN SKILLED HEALTHCARE, INC. is a company that

24    runs healthcare services through various affiliates across California.  Its primary address

25    is 28202 Cabot Road, Suite 412, Laguna Niguel CA 92677. Through common ownership

26    and control, Aspen Skilled Healthcare, Inc. is affiliated with twenty healthcare facilities

27    that provided long term care and assisted living services to its clients.

28        10.    Defendant Jay Brady is President and Chairman of Aspen Skilled

1  Healthcare, Inc. and is on the governing board of each of the affiliated healthcare

2  facilities listed below.

3      11.    Defendant Ryan Case is Manager of Aspen Skilled Healthcare, Inc. and is

4  on the governing board of each of the affiliated healthcare facilities listed below.

5      12.    Defendant Jeff Bradshaw is Manager of Aspen Skilled Healthcare, Inc. and

6  is on the governing board of each of the affiliated healthcare facilities listed below.

7      13.    Defendant ALGD, LLC, which does business as Stonebrook Health and

8  Rehabilitation, is a Skilled Nursing Facility ("SNF") located at 350 De Soto Drive, Los

9  Gatos, CA 95032.

10      14.    Defendant ALGT, LLC, which does business as Woodlands Healthcare

11  Center, is a Skilled Nursing Facility ("SNF") located at 14966 Terreno De Flores Lane,

12  Los Gatos, CA 95032.

13      15.    Defendant AWHC, LLC, which does business as Mission Palms Healthcare

14  Center is a Skilled Nursing Facility ("SNF") located at 240 Hospital Circle,

15  Westminster, CA 92683.

16      16.    Defendant ASFC, LLC, which does business as Sierra Vista Healthcare is

17  a Skilled Nursing Facility ("SNF") located at 1715 South Cedar Ave, Fresno, CA 93702.

18      17.    Defendant ATMC, LLC, which does business as Tracy Nursing and

19  Rehabilitation Center is a Skilled Nursing Facility ("SNF") located at 545 West Beverly

20  Pl, Tracy, CA 95376.

21      18.    Defendant ASCC, LLC, which does business as Riverwood Healthcare

22  Center is a Skilled Nursing Facility ("SNF") located at 5320 Carrington Circle,

23  Stockton, CA 95210.

24      19.    Defendant AOTN, LLC, which does business as Oakland Heights Nursing

25  and Rehabilitation is a Skilled Nursing Facility ("SNF") located at 2361 E. 29th Street,

26  Oakland, CA 94606.

27      20.    Defendant ACSB, LLC, which does business as Marina Pointe Healthcare

28  and Subacute is a Skilled Nursing Facility ("SNF") located at 5240 Sepulveda Blvd,

Culver City, CA 90230.

21.    Defendant ALHL, LLC, which does business as Lodi Nursing and Rehabilitation is a Skilled Nursing Facility ("SNF") located at 1334 South Ham Lane, Lodi, CA 95242.

22.    Defendant ALAL, LLC, which does business as Kei-Ai Los Angeles Healthcare Center is a Skilled Nursing Facility ("SNF") located at 2221 Lincoln Park Ave, Los Angeles, CA 90031.

23.    Defendant AGVA, LLC, which does business as Kei-Ai South Bay Healthcare Center is a Skilled Nursing Facility ("SNF") located at 15115 South Vermont Ave, Gardena, CA 90247.

24.    Defendant AICF, LLC, which does business as Sakura Intermediate Care Facility is a Skilled Nursing Facility ("SNF") located at 325 South Boyle Ave, Los Angeles, CA 90033.

25.    Defendant ASJK, LLC, which does business as The Avenues Transitional Care Center is a Skilled Nursing Facility ("SNF") located at 2043 19th Ave, San Francisco, CA 94116.

26.    Defendant ASFP, LLC which does business as Pacific Heights Transitional Care Center is a Skilled Nursing Facility ("SNF") located at 2707 Pine Street, San Francisco, CA 94115.

27.    Defendant AWCY, LLC, which does business as La Casa Via Transitional Care Center is a Skilled Nursing Facility ("SNF") located at 1449 Ygnacio Valley Road, Walnut Creek, CA 94598.

28.    Defendant AGSE, LLC, which does business as South Marin Health & Wellness Center is a Skilled Nursing Facility ("SNF") located at 1220 South Eliseo Dr, Greenbrae, CA 94904.

29.    Defendant APTB, LLC, which does business as Petaluma Post - Acute Rehabilitation is a Skilled Nursing Facility ("SNF") located at 1115 B Street, Petaluma, CA 94952.

30.    Defendant ASMB, LLC, which does business as Berkley East Convalescent hospital is a Skilled Nursing Facility ("SNF") located at 2021 Arizona Ave, Santa Monica, CA 90404.

31.    Defendant ASBW, LLC, which does business as Berkley West Convalescent hospital is a Skilled Nursing Facility ("SNF") located at 1623 Arizona Ave, Santa Monica, CA 90404.

32.    Defendant ASD6, LLC, which does business as Hillcrest Heights Healthcare Center is a Skilled Nursing Facility ("SNF") located at 4033 Sixth Ave, San Diego, CA 92103.

## IV.    THE FALSE CLAIMS ACT

33.    The federal False Claims Act (the "FCA" or "Act") was originally enacted during the Civil War.  Congress substantially amended the Act in 1986 – and, again, in 2009 and 2010 – to enhance the ability of the United States Government to recover losses sustained as a result of fraud against it.  The Act was amended after Congress found that fraud in federal programs was pervasive and that the Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization. Congress intended that the amendments would create incentives for individuals with knowledge of fraud against the Government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

34.    The FCA prohibits, inter alia: (a) knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval; (b) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim; (c) knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government; and (d) conspiring to violate any of these sections

1  of the FCA. 31 U.S.C. §§ 3729(a)(1)(A)-(C), and (G). Any person who violates the

2  FCA is liable for a civil penalty of thousands of dollars for each violation, plus three

3  times the amount of the damages sustained by the United States. 31 U.S.C. § 3729(a)(1).

4      35.    The FCA allows any person having information about an FCA violation to

5  bring an action on behalf of the United States, and to share in any recovery. The FCA

6  requires that the Complaint be filed under seal for a minimum of 60 days (without service

7  on the defendant during that time) to allow the government time to conduct its own

8  investigation and to determine whether to join the suit.

9  **V.    THE CARES ACT AND PPP PROGRAM**

10      36.    The CARES Act was enacted in March 2020 to provide emergency

11  financial assistance to the millions of Americans suffering the economic effects caused

12  by the COVID-19 pandemic. One piece of the CARES Act was the authorization of up

13  to $349 billion in forgivable loans to small businesses for job retention and certain other

14  expenses, through the PPP. In April 2020, Congress authorized over $300 billion in

15  additional PPP funding.

16      37.    In order to obtain a PPP loan, a business had to qualify as a small business,

17  and was required submit a PPP loan application. The application is signed by an

18  authorized representative of the business. The application requires the business to

19  acknowledge the program rules and make affirmative certifications to be eligible to

20  obtain the PPP loan and receive funds.

21      38.    The certifications made by applying businesses in the application are

22  below:

### Paycheck Protection Program
### Borrower Application Form

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.

- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

_____    The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_____    Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_____    The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_____    The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

_____    I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

_____    During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_____    I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

_____    I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____    _____
Signature of Authorized Representative of Applicant    Date

39.    To be eligible to receive money from the program, the business must make a good faith determination that "current economic uncertainty makes this loan necessary to support the ongoing operations of the Applicant."  This means that entities are only eligible for PPP loans where obtaining the money *through the PPP program is a necessity*.  As more fully explained by the Department of Treasury in its Frequently Asked Questions website related to the PPP program (available at https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf, last accessed June 25, 2020):

31. **Question:** Do businesses owned by large companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP loan?

**Answer:** In addition to reviewing applicable affiliation rules to determine eligibility, all borrowers must assess their economic need for a PPP loan under the standard established by the CARES Act and the PPP regulations at the time of the loan application. Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary. Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business. For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification.

Lenders may rely on a borrower's certification regarding the necessity of the loan request. Any borrower that applied for a PPP loan prior to the issuance of this guidance and repays the loan in full by May 7, 2020 will be deemed by SBA to have made the required certification in good faith.[11]

Because this response was added on April 23, 2020, Treasury provided a safe harbor to businesses who received but did not *need* a PPP loan to repay those loans with no consequence if they did so by the deadline. However, entities that did not repay their loan, but instead sought forgiveness under the PPP program, are not protected by the safe harbor.

40. Significantly, the applicant is also required to identify whether "the applicant or any owner of the Applicant [is] an owner of any other business, or have common management with any other business?" PPP borrower application Question 3. Any such business must be disclosed as part of the application.

41. As explained in the FAQs, "[b]orrowers must apply the affiliation rules set forth in SBA's Interim Final Rule on Affiliation. A borrower must certify on the Borrower Application Form that the borrower is eligible to receive a PPP loan, and that certification means that the borrower is a small business concern as defined in section 3 of the Small Business Act." (available at

https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf, last accessed December 2, 2020).

42.    Skilled Nursing Facilities use North American Industry Classification System ("NAICS") code 623110.  According to the Small Business Administration, SNFs are deemed to be small businesses if their total revenues, including affiliates, are $30,000,000.00 or less.

43.    In addition the applicant must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures are used to calculate the amount of money the small business is eligible to receive under the PPP as well as to determine eligibility in the program.  In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

44.    A business's PPP loan application is received and processed, in the first instance, by a participating financial institution, then transmitted, for further review, to the Small Business Administration ("SBA") to assess the applicant's eligibility.  If a PPP loan application is approved, the participating financial institution funds the PPP loan directly.

45.    PPP loan proceeds must be used by the business on certain permissible expenses -- payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a minimum percentage of those funds on payroll expenses.

46.    Borrowers may apply for and receive forgiveness of the principal and interest on their loans if they use the funds for certain qualifying business expenses.  In order for a loan to be forgiven, subject to certain additional requirements, at least 60% of the proceeds of the loan must be spent on payroll costs, while the remainder of the forgiven amount must be spent on business mortgage interest payments, business rent or lease payments, or business utility payments.

47.   In applying for forgiveness of a loan, borrowers again make certifications and representations to the government that are material and binding. The certifications made in the forgiveness application including the following:

**By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:**

The authorized representative of the Borrower certifies to all of the below by **initialing** next to each one.

_____   The dollar amount for which forgiveness is requested:
- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);
- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;
- includes payroll costs equal to at least 60% of the forgiveness amount;
- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and
- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

_____   I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

_____   The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

## VI.   THE ASPEN SKILLED HEALTHCARE, INC. DEFENDANTS' DID NOT QUALIFY FOR THE LOANS

### A.   Aspen Skilled Healthcare, Inc. and its Affiliates Far Exceed the 500-Employee Cap, and the Revenue Benchmarks

48.   Aspen Skilled Healthcare, Inc., located at 28202 Cabot Road, Suite 412, Laguna Niguel, CA 92677, was formed in 2009.  Though it has less than ten direct employees, Aspen Skilled Healthcare, Inc. manages, operates, and exerts complete control over twenty healthcare service providers throughout California, with hundreds of employees.  The chain employs a total of 2,842 employees, had a combined 2019 revenue of $223,665,667, far exceeding the legal maximum.

49.   Jay Brady, President and Chairmen of Aspen Skilled Healthcare, Inc. is on the governing board of each of the affiliated healthcare facilities.  Other members of the governing boards of each facility also overlap, including Ryan Case and Jeff Bradshaw, who are also on the governing board of each of the affiliated healthcare facilities.

50.    The affiliated entities comprising the Aspen Skilled Healthcare, Inc. chain are as follows:

51.    **ALGD, LLC**, which does business as Stonebrook Health and Rehabilitation, is a Skilled Nursing Facility ("SNF") located at 350 De Soto Drive, Los Gatos, CA 95032.  As of December 31, 2019, it had 150 employees.  It had revenues in 2019 of $13,208,769, and a Total Net Worth of $11,044,393.

52.    **ALGT, LLC**, which does business as Woodlands Healthcare Center, is a Skilled Nursing Facility ("SNF") located at 14966 Terreno De Flores Lane, Los Gatos, CA 95032.  As of December 31, 2019, it had 94 employees.  It had revenues in 2019 of $10,842,313, and a Total Net Worth of $3,254,828.

53.    **AWHC, LLC**, which does business as Mission Palms Healthcare Center is a Skilled Nursing Facility ("SNF") located at 240 Hospital circle, Westminster, CA 92683.  As of December 31, 2019, it had 156 employees.  It had revenues in 2019 of $12,155,182, and a Total Net Worth of negative $8,190,784.

54.    **ASFC, LLC**, which does business as Sierra Vista Healthcare is a Skilled Nursing Facility ("SNF") located at 1715 South Cedar Ave, Fresno, CA 93702.  As of December 31, 2019, it had 158 employees.  It had revenues in 2019 of $ 9,873,842, and a Total Net Worth of $3,551,717.

55.    **ATMC, LLC**, which does business as Tracy Nursing and Rehabilitation Center is a Skilled Nursing Facility ("SNF") located at 545 West Beverly Pl, Tracy, CA 95376.  As of December 31, 2019, it had 108 employees.  It had revenues in 2019 of $8,850,546, and a Total Net Worth of $3,363,997.

56.    **ASCC, LLC**, which does business as Riverwood Healthcare Center is a Skilled Nursing Facility ("SNF") located at 5320 Carrington Circle, Stockton, CA 95210.  As of December 31, 2019, it had 147 employees.  It had revenues in 2019 of $11,659,816, and a Total Net Worth of $2,693,154.

57.    **AOTN, LLC**, which does business as Oakland Heights Nursing and Rehabilitation is a Skilled Nursing Facility ("SNF") located at 2361 E. 29th Street,

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Oakland, CA 94606. As of December 31, 2019, it had 66 employees. It had revenues in 2019 of $9,240,649, and a Total Net Worth of $6,877,317.

58. **ACSB, LLC**, which does business as Marina Pointe Healthcare and Subacute is a Skilled Nursing Facility ("SNF") located at 5240 Sepulveda Blvd, Culver City, CA 90230. As of December 31, 2019, it had 136 employees. It had revenues in 2019 of $15,094,121, and a Total Net Worth of $2,239,324.

59. **ALHL, LLC**, which does business as Lodi Nursing and Rehabilitation is a Skilled Nursing Facility ("SNF") located at 1334 South Ham Lane, Lodi, CA 95242. As of December 31, 2019, it had 115 employees. It had revenues in 2019 of $9,570,419, and a Total Net Worth of $1,184,456.

60. **ALAL, LLC**, which does business as Kei-Ai Los Angeles Healthcare Center is a Skilled Nursing Facility ("SNF") located at 2221 Lincoln Park Ave, Los Angeles, CA 90031. As of December 31, 2019, it had 419 employees. It had revenues in 2019 of $32,265,555, and a Total Net Worth of $2,242,700.

61. **AGVA, LLC**, which does business as Kei-Ai South Bay Healthcare Center is a Skilled Nursing Facility ("SNF") located at 15115 South Vermont Ave, Gardena, CA 90247. As of December 31, 2019, it had 158 employees. It had revenues in 2019 of $10,425,129, and a Total Net Worth of $1,526,784.

62. **AICF, LLC**, which does business as Sakura Intermediate Care Facility is a Skilled Nursing Facility ("SNF") located at 325 South Boyle Ave, Los Angeles, CA 90033. As of December 31, 2019, it had 71 employees. It had revenues in 2019 of $3,509,100, and a Total Net Worth of $1,389,395.

63. **ASJK, LLC**, which does business as The Avenues Transitional Care Center is a Skilled Nursing Facility ("SNF") located at 2043 19th Ave, San Francisco, CA 94116. As of December 31, 2019, it had 169 employees. It had revenues in 2019 of $15,651,085, and a Total Net Worth of $3,724,552.

64. **ASFP, LLC**, which does business as Pacific Heights Transitional Care Center is a Skilled Nursing Facility ("SNF") located at 2707 Pine Street, San Francisco,

CA 94115. As of December 31, 2019, it had 152 employees.  It had revenues in 2019 of $14,252,819, and a Total Net Worth of $3,623,120.

65.    **AWCY, LLC**, which does business as La Casa Via Transitional Care Center is a Skilled Nursing Facility ("SNF") located at 1449 Ygnacio Valley Road, Walnut Creek, CA 94598. As of December 31, 2019, it had 138 employees.  It had revenues in 2019 of $10,691,628, and a Total Net Worth of $1,621,921.

66.    **AGSE, LLC**, which does business as South Marin Health & Wellness Center is a Skilled Nursing Facility ("SNF") located at 1220 South Eliseo Dr, Greenbrae, CA 94904. As of December 31, 2019, it had 100 employees.  It had revenues in 2019 of $10,568,887, and a Total Net Worth of $343,657.

67.    **APTB, LLC**, which does business as Petaluma Post - Acute Rehabilitation is a Skilled Nursing Facility ("SNF") located at 1115 B Street, Petaluma, CA 94952. As of December 31, 2019, it had 156 employees.  It had revenues in 2019 of $11,855,233, and a Total Net Worth of $857,737.

68.    **ASMB, LLC**, which does business as Berkley East Convalescent hospital is a Skilled Nursing Facility ("SNF") located at 2021 Arizona Ave, Santa Monica, CA 90404. As of December 31, 2019, it had 184 employees.  It had revenues in 2019 of $5,216,484, and a Total Net Worth of $280,469.

69.    **ASBW, LLC**, which does business as Berkley West Convalescent hospital is a Skilled Nursing Facility ("SNF") located at 1623 Arizona Ave, Santa Monica, CA 90404. As of December 31, 2019, it had 42 employees.  It had revenues in 2019 of $1,374,950, and a Total Net Worth of $52,348.

70.    **ASD6, LLC**, which does business as Hillcrest Heights Healthcare Center is a Skilled Nursing Facility ("SNF") located at 4033 Sixth Ave, San Diego, CA 92103. As of December 31, 2019, it had 123 employees.  It had revenues in 2019 of $7,359,140, and a Total Net Worth of $2,235,045.

71.    All of the above SNFs are 100% owned by Aspen Skilled Healthcare, Inc. All of the above SNFs have overlapping Governing Boards, and all are operated under

1   the management umbrella of Aspen Skilled Healthcare.

2   72.    Accordingly, per the SBA guidelines, all of these entities are "affiliates,"

3   and their *combined* revenues ($224,917,081) and employee-counts (2,842) were the

4   appropriate measure for PPP qualification.  Had they done so, however, they would not

5   have qualified under any measure for the PPP program.  Knowing this, Defendants

6   concealed their affiliated status, and applied for PPP loans based solely on their own,

7   individual employee counts and revenue figures.

8   **B.    Aspen Skilled Healthcare, Inc. and its Affiliates Submitted Fraudulent**

9   **PPP Applications**

10  73.    On May 11, 2020, Stonebrook Health and Rehabilitation received

11  $1,150,000.00 in PPP loans through Wells Fargo.  Due to the total affiliated revenues

12  and employee-counts, ALGD, LLC was not eligible for a PPP loan, and necessarily

13  made several false certifications in order to obtain this loan.

14  74.    On May 1, 2020, Mission Palms Healthcare Center received $1,100,000.00

15  in PPP loans through Wells Fargo.  Due to the total affiliated revenues and employee-

16  counts, AWHC, LLC was not eligible for a PPP loan, and necessarily made several false

17  certifications in order to obtain this loan.

18  75.    On May 1, 2020, Kei-Ai Los Angeles Healthcare Center received

19  $3,000,000.00 in PPP loans through Wells Fargo.  Due to the total affiliated revenues

20  and employee-counts, ALAL, LLC was not eligible for a PPP loan, and necessarily made

21  several false certifications in order to obtain this loan.

22  76.    On May 11, 2020, Kei-Ai South Bay Healthcare Center received

23  $850,000.00 in PPP loans through Wells Fargo.  Due to the total affiliated revenues and

24  employee-counts, AGVA, LLC was not eligible for a PPP loan, and necessarily made

25  several false certifications in order to obtain this loan.

26  77.    On May 1, 2020, The Avenues Transitional Care Center received

27  $1,450,000.00 in PPP loans through Wells Fargo.  Due to the total affiliated revenues

28  and employee-counts, ASJK, LLC was not eligible for a PPP loan, and necessarily made

several false certifications in order to obtain this loan.

78.    On May 5, 2020, Pacific Heights Transitional Care Center received $1,300,000.00 in PPP loans through Wells Fargo.  Due to the total affiliated revenues and employee-counts, ASFP, LLC was not eligible for a PPP loan, and necessarily made several false certifications in order to obtain this loan.

79.    On May 1, 2020, Petaluma Post - Acute Rehabilitation received $1,150,000.00 in PPP loans through Wells Fargo.  Due to the total affiliated revenues and employee-counts, APTB, LLC was not eligible for a PPP loan, and necessarily made several false certifications in order to obtain this loan.

**C.    The Aspen Skilled Healthcare, Inc. Chain Had Significant Sources of Financial Assistance, and Otherwise Were Not in Need of PPP Loans**

80.    Defendants' PPP Loan applications were also fraudulent because Defendants did not need financial assistance.  To the contrary, Defendants received an influx of revenues and other financial assistance as a result of the COVID-19 pandemic.

81.    Medicare patients in nursing homes have the highest reimbursement rates, between $600 to $1,000 a day, several times higher than Medicaid (Medi-Cal) reimbursement of approximately $200 a day.  Nursing homes compete for Medicare patients which are main source of profitability for this industry.  Generally, nursing homes may only admit Medicare patients after a hospital qualifying stay, meaning that they had been in a hospital for three (3) days prior.  In response to the COVID-19 pandemic, this three-day qualifying stay requirement was temporarily waived by the Center for Medicare and Medicaid Services ("CMS") resulting in a flood of new and profitable high reimbursement patients entering skilled nursing facilities across the country.

82.    With the increase in patients due to the CMS waiver of qualifying stays, nursing homes throughout the country and California had to increase their staffing levels.  In a time where much of the nation was suffering, the nursing home business was growing and hiring more employees.

83.    Moreover, on March 28, 2020, CMS allowed for providers who bill under Medicare parts A and B to request a three-month advance of their Medicare payments, leading to an influx of cash in many health care facilities.

84.    Furthermore, California temporarily increased reimbursement for Medi-Cal patients by increasing the facility Medi-Cal rate by 10%. 70 to 80% of nursing home residents have Medi-Cal.  This resulted in additional significant profits to the bottom line, in some cases, millions of dollars.  Medi-Cal generally pays nursing homes within three weeks from billing, and most billing is electronic.  Accordingly, the increased cash flow to Defendants as a result of this temporary reimbursement boost was virtually instantaneous.

85.    Furthermore, on March 30, 2020, Governor Gavin Newsome announced the creation of the California Health Care Worker Surge Initiative, in which California eased licensing and other restrictions to increase the pool of potential health care workers given the vastly increased need.

86.    Due to these circumstances, though claiming PPP loans were necessary to ensure that they did not have to lay off workers, the Aspen Skilled Healthcare, Inc. Defendants were never at risk of being unable to pay their staff.  Instead of potential payroll cuts, the healthcare providers listed were increasing their staffing levels in conjunction with the increasing need of medical care providers due to the COVID-19 pandemic.

87.    Worse still, several of the Defendants received an influx of cash/windfall from other federal agencies; making the PPP loans even less necessary.

88.    For example, on May 8, 2020, Stonebrook Health and Rehabilitation received $1,533,261.00 in the form of a loan from CMS.  On May 11, 2020, they received another $1,500,000.00 from the Small Business Administration in the form of a loan.  On October 27, 2020, they received $682,559.00 in the form of a grant from the Department of Health and Human Services.

89.    On May 8, 2020, Woodlands Healthcare Center received $1,417,743.00 in

the form of a loan from CMS.  On October 27, 2020, they received $620,382.00 in the form of a grant from the Department of Health and Human Services.

90.     On May 8, 2020, Mission Palms Healthcare Center received $1,381,538.00 in the form of a loan from CMS.  On May 1, 2020, they received another $1,500,000.00 from the Small Business Administration in the form of a loan.  On October 27, 2020, they received $718,583.00 in the form of a grant from the Department of Health and Human Services.

91.     On May 8, 2020, Sierra Vista Healthcare received $779,876.00 in the form of a loan from CMS.  On October 27, 2020, they received $570,157.00 in the form of a grant from the Department of Health and Human Services.

92.     On May 8, 2020, Tracy Nursing and Rehabilitation Center received $1,041,685.00 in the form of a loan from CMS.  On October 27, 2020, they received $512,872.00 in the form of a grant from the Department of Health and Human Services.

93.     On May 8, 2020, Riverwood Healthcare Center received $719,799.00 in the form of a loan from CMS.  On October 27, 2020, they received $581,207.00 in the form of a grant from the Department of Health and Human Services.

94.     On May 8, 2020, Oakland Heights Nursing and Rehabilitation received $1,230,915.00 in the form of a loan from CMS.  On October 27, 2020, they received $534,788.00 in the form of a grant from the Department of Health and Human Services.

95.     On May 8, 2020, Marina Pointe Healthcare and Subacute received $1,311,933.00 in the form of a loan from CMS.  On October 27, 2020, they received $776,194.00 in the form of a grant from the Department of Health and Human Services.

96.     On May 8, 2020, Lodi Nursing and Rehabilitation received $930,002.00 in the form of a loan from CMS.  On October 27, 2020, they received $523,977.00 in the form of a grant from the Department of Health and Human Services.

97.     On May 8, 2020, Kei-Ai Los Angeles Healthcare Center received $2,209,745.00 in the form of a loan from CMS.  On May 1, 2020, they received another $3,500,000.00 from the Small Business Administration in the form of a loan.  On

October 27, 2020, they received $1,395,926.00 in the form of a grant from the Department of Health and Human Services.

98.   On May 8, 2020, Kei-Ai South Bay Healthcare Center received $961,300.00 in the form of a loan from CMS.  On May 11, 2020, they received another $675,000.00 from the Small Business Administration in the form of a loan.  On October 27, 2020, they received $562,517.00 in the form of a grant from the Department of Health and Human Services.

99.   On August 18, 2021, Sakura Intermediate Care Facility received $632,575.00 in the form of a grant from the Department of Health and Human Services through the CARES Act Provider Relief Fund.

100.   On May 8, 2020, The Avenues Transitional Care Center received $925,642.00 in the form of a loan from CMS.  On May 1, 2020, they received another $1,500,000.00 from the Small Business Administration in the form of a loan.   On October 27, 2020, they received $686,468.00 in the form of a grant from the Department of Health and Human Services.

101.   On May 8, 2020, Pacific Heights Transitional Care Center received $766,445.00 in the form of a loan from CMS.  On May 5, 2020, they received another $1,500,000.00 from the Small Business Administration in the form of a loan.   On October 27, 2020, they received $616,116.00 in the form of a grant from the Department of Health and Human Services.

102.   On May 8, 2020, La Casa Via Transitional Care Center received $992,091.00 in the form of a loan from CMS through the CARES Act Provider Relief Fund.

103.   On December 9, 2020, South Marin Health & Wellness Center received $1,198,058.00 in the form of a loan from CMS through the CARES Act Provider Relief Fund

104.   On May 1, 2020, Petaluma Post - Acute Rehabilitation received $1,150,000.00 in the form of a loan from the Small Business Administration.  On August

1  18, 2020, they received $732,335.00 in the form of a grant from the Department of

2  Health and Human Services.

3       105.   Potential borrowers that were in need of these precious funds lost out on

4  the opportunity to pay their workers and, in some cases, save their businesses from

5  closing, because the funds were instead directed to the Aspen Skilled Healthcare, Inc.

6  Defendants.

7       106.   The Aspen Skilled Healthcare, Inc. Defendants violated the False Claims

8  Act by making false claims for funds through PPP loans, making false statements in

9  support those applications and claims, retaining funds which they were required to

10  return, using the proceeds of the loans for ineligible expenses despite promises to the

11  contrary, and conspiring to obtain the PPP loans.

12  **VII.   CAUSES OF ACTION**

13                    **FIRST CAUSE OF ACTION**

14                    **Submission of a False Claim**

15                    **31 U.S.C. § 3729(a)(1)(A)**

16       107.   Relator realleges and incorporates by reference the allegations contained in

17  all paragraphs of the Complaint as if fully set forth herein.

18       108.   This is a claim for treble damages and penalties under the False Claims Act,

19  31 U.S.C. § 3729, *et seq.*, as amended.

20       109.   By virtue of the acts described above, Defendants knowingly presented or

21  caused to be presented, false or fraudulent claims to the United States Government for

22  payment or approval.

23       110.   The Government, unaware of the falsity funded PPP loans to be paid to the

24  Aspen Skilled Healthcare, Inc. that would not have been funded or paid but for

25  Defendants' illegal conduct.

26       111.   By reason of Defendants' acts, the United States has been damaged, and

27  continues to be damaged, in a substantial amount to be determined at trial.

28

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**                                                    19

112.    Additionally, the United States is entitled to the maximum penalty permitted for each and every violation alleged herein.

113.    Wherefore, Relator prays for relief as set forth below.

### SECOND CAUSE OF ACTION

### Making False Statement in Support of a Claim

### 31 U.S.C. § 3729(a)(1)(B)

114.    Relator realleges and incorporates by reference the allegations contained in all paragraphs of the Complaint as if fully set forth herein.

115.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

116.    By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims.

117.    The Government, unaware of the falsity funded PPP loans to be paid to the Aspen Skilled Healthcare, Inc. that would not have been funded or paid but for Defendants' illegal conduct.

118.    By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

119.    Additionally, the United States is entitled to the maximum penalty permitted for each and every violation alleged herein.

120.    Wherefore, Relator prays for relief as set forth below.

### THIRD CAUSE OF ACTION

### Conspiracy to Violate the False Claims Act

### 31 U.S.C. § 3729(a)(1)(C)

121.    Relator realleges and incorporates by reference the allegations contained in all paragraphs of the Complaint as if fully set forth herein.

122.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

123.   By virtue of the acts described above, Defendants, their agents, employees and other co-conspirators knowingly conspired to submit false claims to the United States, make or use false records or statements material to false or fraudulent claims, and to conceal and fail to remit overpayments from the United States.

124.   The Government, unaware of the falsity funded PPP loans to be paid to the Aspen Skilled Healthcare, Inc. that would not have been funded or paid but for Defendants' illegal conduct.

125.   By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

126.   Additionally, the United States is entitled to the maximum penalty permitted for each and every violation alleged herein.

127.   Wherefore, Relator prays for relief as set forth below.

**FOURTH CAUSE OF ACTION**

**Improper Retention of Money Owed to the Government**

**31 U.S.C. § 3729(a)(1)(G)**

128.   Relator realleges and incorporates by reference the allegations contained in all paragraphs of the Complaint as if fully set forth herein.

129.   This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

130.   By virtue of the acts described above, Defendants knowingly concealed overpayments from the United States Government and failed to remit such overpayments.

131.   The Government, unaware of the falsity funded PPP loans to be paid to the Aspen Skilled Healthcare, Inc. that would not have been funded or paid but for Defendants' illegal conduct.

132.   By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

133.   Additionally, the United States is entitled to the maximum penalty

permitted for each and every violation alleged herein.

134.   Wherefore, Relator prays for relief as set forth below.

## VIII.   **PRAYER FOR RELIEF**

WHEREFORE, Relator prays for judgment against the Defendants as follows:

1.   That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus the maximum civil penalty for each violation of 31 U.S.C. § 3729;

2.   That Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

3.   That Relator be awarded all costs of this action, including attorneys' fees and expenses; and

4.   That Relator recover such other relief as the Court deems just and proper.

Dated: February 7, 2022                    **COTCHETT, PITRE & McCARTHY, LLP**

By: _____
JUSTIN T. BERGER
THERESA E. VITALE

*Attorneys for Relator*

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**                                                                                            22

**JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated: February 7, 2022                    **COTCHETT, PITRE & McCARTHY, LLP**

By: _____
JUSTIN T. BERGER
THERESA E. VITALE

*Attorneys for Relator*